## 49308. TOMBLIN v. S. S. KRESGE COMPANY.

EBERHARDT, Presiding Judge.

Appellant in her complaint alleges that the appellee, a corporation, through its agent, a store security guard, unlawfully arrested and detained the plaintiff in the defendant's department store in the presence of numerous other shoppers; that she was subjected to humiliations by the defendant's agents while she was a customer in the store; that plaintiff was subsequently arrested by a police officer, charged with the crime of theft by taking and later acquitted of that charge.

The defendant answered by generally denying these allegations and by setting forth as a defense Code Ann. § 105-1005 dealing with circumstances under which the operator of a mercantile establishment will be free of liability for false arrest or false imprisonment.

At the trial, before a jury, the plaintiff testified that she entered the defendant's store for the purpose of Christmas shopping. While in the store the plaintiff passed the jewelry department where she saw on display in a clear plastic box an ornamental pin to wear on a coat. The plaintiff picked up the box and walked to another section of the store. At one point during her browsing, the plaintiff reached inside her coat pocket, as she testified, for the purpose of obtaining a kleenex. Her testimony was that she did not have the pin in her hand when she reached in her pocket and that she "never had anything in [her] pockets that belonged to [defendant's department store]." Shortly thereafter a security guard for the defendant approached the plaintiff, stated that she was under arrest and asked what she had in her pocket. She replied she had nothing in her pocket. The testimony of the security guard at a subsequent hearing in the Recorder's Court, which was recorded on a tape recorder at that time, was played before the jury. In it the security guard said, "A. I seen her put the pin in her pocket; and,

as I approached her and identified myself as the security officer, I told her she had some merchandise in her pocket that belonged to us. That's when she reached in her pocket. She said, 'No, I don't,' and she had the pin right in her hand." The security guard then asked the plaintiff to accompany him to a security room in the rear of the store. As the guard walked with the plaintiff through the store, they passed the store manager, at which time the guard commented to the manager, "I have another one for you." In the security room, the plaintiff volunteered to empty her coat pockets, which, according to her testimony, produced "two kleenex and one little rain bonnet." This testimony was later contradicted by the testimony of one of defendant's employees who was present when plaintiff ". . . pulled the little pin out of this pocket, and she pulled out a kleenex and a little rain bonnet out of her left pocket, and she laid them on the desk . . ." in the security room. A short while later, the store manager came into the security room while the plaintiff was obtaining identification cards from her wallet to show the guard. Some pictures of plaintiff's grandchildren fell out of her wallet and the manager saw them and commented, "I wish your grandchildren could see you now." Meanwhile the defendant's employees summoned a policeman on the telephone, and after an approximate thirty-minute wait in the security room the policeman arrived and escorted plaintiff through the front entrance of the store to a police car. She was then taken to police headquarters where she posted bond and was released.

A nolle prosequi was subsequently entered in the criminal case in a state court, apparently due to the absence of the security guard as a witness. Later, a judgment of acquittal was entered in the same case. Plaintiff testified that while she was in defendant's store she became nauseated during this incident, and felt that "I was fixing to have a heart attack." She asserted that later she developed nervous discomfort, indigestion and sleeplessness because of the incident. There was no evidence of loud, boisterous or unseemly conduct on the part of defendant's employees which would attract the attention of other shoppers.

At the close of this evidence, prior to submission of the case to the jury, the defendant moved for a directed verdict which was granted by the trial judge and from a judgment entered on the verdict the plaintiff appeals. *Held:*

1.  Plaintiff's first enumeration of error is that the trial judge erred in granting the defendant's motion for directed verdict.

By Ga. L. 1958, p. 693 (Code Ann. § 105-1005) the General Assembly provided a reasonable course of conduct which a merchant may follow in affording protection to his displayed merchandise without incurring an unreasonable exposure to tort liability in doing so. In *S. S. Kresge Co. v. Carty,* 120 Ga. App. 170 (169 SE2d 735) we held that a suit brought for "tortious misconduct" which relied upon the same elements for affixing liability as would be done in an action for false arrest, false imprisonment or assault and battery does not proscribe the application of what has generally been called the "Shoplifter's Act," found in Code Ann. § 105-1005, and that the merchant and his agents are nevertheless protected against liability if their conduct springs from a reasonable belief that the party detained or arrested was engaged in shoplifting in his store. And see *Turner v. Bogle,* 115 Ga. App. 710 (155 SE2d 667); *Dixon v. S. S. Kresge, Inc.,* 119 Ga. App. 776 (169 SE2d 189); *Godwin v. Gibson Products Co. of Albany,* 121 Ga. App. 59 (172 SE2d 467). Applying the same principle we conclude that if words spoken by the merchant or his agents in the course of the arrest or the detention may appear to cast some reflection against the detainee in that they may indicate a belief or an assertion that the detainee has engaged in shoplifting, these too are covered by the Shoplifter's Act and no liability can be affixed for the making of such statements or assertions under the theory of tortious misconduct if there was basis for a reasonable belief that the detainee was in fact engaged in shoplifting in the store. What a thing is called in pleadings is not controlling—it is what it is in fact and in substance.

While witnesses testifying for the defendant are positive in their assertions relative to this customer's

conduct and strongly indicate shoplifting activity, yet she positively denies it, and thus a factual issue is raised. We think this fact issue includes that of whether the merchant or its agents had reasonable cause to believe that she was shoplifting, and thus it should have been submitted to a jury for resolution.

We do not think that the case of *Godwin v. Gibson Products Co. of Albany,* 121 Ga. App. 59, supra, requires a different conclusion here. In that case the defendant in defending the action not only had circumstances as strong or stronger than those appearing here indicating probable cause to believe that the detainee was engaged in shoplifting, but also had an admission from him whereas here there is a denial. This enumeration is meritorious.

2. A policeman who made the arrest was testifying and was asked on direct examination whether, at the time of the arrest he had made a determination that probable cause existed for the belief that the plaintiff had engaged in shoplifting. The question was objected to as calling for a conclusion. It was then changed, before being answered, to a question as to whether he had been trained to make such determinations before making arrests. Again there was exception on the same ground, but the exception was overruled and he answered that he had been so trained. He was then asked who had made the determination of probable cause, and again over objection he was allowed to answer that he had made the determination from information that he had received from the people at the store. This evidence was offered "not to bind anybody, but in explanation of the arrest."

An officer is entitled to explain the basis for making an arrest and to testify as to all of the facts in connection with it. *Davis v. State,* 230 Ga. 902 (2) (199 SE2d 779). He may testify as to the conduct of the party arrested at the time the arrest was made, or closely thereto, or in connection therewith. He may testify relative to information which he obtained from others which afforded the basis for obtaining a warrant, or for making an arrest without a warrant. However, hearsay is admissible to explain the officer's conduct, but not in proof of the fact. Here, it was permissible for the officer

to testify as to what information he had received and on which he acted in making the arrest, but of course that evidence could not be admitted as proof of the facts related in the hearsay — only in explanation of his making the arrest. He could testify that based upon information which he received from the people at the store he acted in making the arrest. Implicit in that is that he concluded that there existed probable cause to believe that the customer had committed an act of shoplifting. He could not have testified to the bare conclusion that probable cause existed, for that would be in proof of that fact rather than in explanation of his conduct. With this explanation, we do not find error in the rulings made.

3. Appellant enumerates error upon the exclusion of evidence as to the plaintiff's good character. Reference to the record discloses that counsel stated at the time that he was offering the evidence in rebuttal to questioning by the defendant's counsel which impeached the plaintiff. Defense counsel then stated that he had not impeached the plaintiff and plaintiff withdrew the offer of the character evidence. In this status of the record there is nothing before the court for review.

4. Enumeration of error 4 relative to the admission of certain testimony is deemed to have been abandoned. No reference is made to it in appellant's brief. It is not supported with argument or citation of authority. *Martin v. State,* 223 Ga. 649, 653 (7) (157 SE2d 458).

5. Insofar as appellant may seek recovery for slander by servants or agents of the corporate defendant there can be no recovery without proof that the words and statements claimed to have been slanderous in nature (a) were in fact slanderous, (b) were published to unauthorized parties, and (c) were authorized by the corporate employer to be uttered on the occasion by the servant or employee who may have uttered them. *Behre v. National Cash Register Co.,* 100 Ga. 213 (27 SE 986); *White v. Cudahy Co.,* 130 Ga. App. 64 (1) (202 SE2d 233). The requisite proof does not appear in this record.

6. Appellant suggests that Code §§ 27-211 and 27-212 may conflict with the Act of 1958, known as the Shoplifter's Act. We do not so regard § 27-211, and we do

not need to make that determination here, since this is not the subject matter of any enumeration of error, but if such be the case as to § 27-212 the rule for construing statutes which may be in conflict is that the last legislative expression prevails. *Gunn v. Balkcom,* 228 Ga. 802 (188 SE2d 500); *Foster v. Brown,* 199 Ga. 444 (a) (34 SE2d 530); *Martin v. State,* 75 Ga. App. 807 (1) (44 SE2d 562).

We reverse for the sole reason that we find a factual issue to be resolved by the jury, viz., whether the defendant's servants or agents had reasonable cause to believe that the plaintiff had engaged in an act of shoplifting when they detained, questioned plaintiff and thereafter delivered her over to the police.

*Judgment reversed. Deen and Stolz, JJ., concur.*

ARGUED MAY 7, 1974 — DECIDED JUNE 24, 1974.

*Billy E. Moore,* for appellant.

*Kelly, Champion, Denney & Pease, Edward W. Szczepanski, Jr., S. E. Kelly,* for appellee.